IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Union Pacific Railroad Company, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | 6:19-CV-00574-JDK |
| | § | |
| City of Palestine, Texas et al, | § | |
| *Defendants* | § | |

### **ORIGINAL ANSWER OF DEFENDANTS ANDERSON COUNTY, TEXAS, AND THE CITY OF PALESTINE TO PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Defendants, Anderson County, Texas, and the City of Palestine file this Original Answer to Plaintiff's Original Complaint and in support thereof would show the Court as follows: This case involves an attempt by the Union Pacific Railroad Company to avoid and nullify its voluntary contractual obligations to the Defendants and their citizens.

### I.   BACKGROUND

1. In 1872, the people of Palestine, Texas, in addition to lucrative grants from the State of Texas, agreed to issue an interest bearing bond in the amount of $150,000 ($3.159M in 2020 dollars) and transfer it to the Houston and Great Northern Railroad as consideration for the railroad to construct and operate a connection to Palestine and in further consideration for a contractual commitment from the Railroad to permanently maintain its general offices, machine shops and roundhouses there.

2. In 1973, upon approval of the Texas Legislature, H&GN merged with International Railroad to form the International and Great Northern Railroad Company (I&GN). The new company then assumed the rights and obligations of H&GN in exchange for the

$150,000 Anderson County bond plus the additional consideration of Palestine's promise to construct housing for officers and employees.

3. In 1911, IG&N went through a reorganization which created a new corporation which had the same name and was incorporated in Texas and its articles of incorporation listed Houston as its headquarters.

4. In 1914, Palestine filed for an injunction to order IG&N to fulfill its contractual obligations, which the Texas trial court granted and which would eventually be affirmed by the United States Supreme Court.

5. During the 1920s, through a series of transactions the Missouri Pacific Railroad (Mopac) acquired IG&N and operated it as a separate entity.

6. In 1933, Mopac and its subsidiaries filed for bankruptcy. The proposed plan for reorganization provided for a consolidation of the subsidiaries of Mopac, including of IG&N into a united company.

7. In 1938, R.J. Jewell, examiner for the Interstate Commerce Commission (ICC) recognized that neither the ICC nor the Courts could lawfully approve a plan for reorganization that would remove the offices and shops of IG&N from Palestine.

8. Thus, Mopac was left with three options (1) the company could continue operating IG&N as a separate company, (2) the company could move all their offices to Palestine, or (3) they could voluntarily renegotiate with the City and the County the terms of the 1914 judgment.

9. In 1954, Mopac choose the third option and for valuable consideration by all parties, the City, County and Railroad entered into the 1954 agreement.

10. In short time, Mopac went to the Interstate Commerce Commission seeking to invalidate the 1954 agreement, and the 5th Circuit Court of Appeals ruled that the ICC did not have

congressional authority to nullify a voluntary contract. *Palestine v. United States*, 559 F.2d 408, 414-415 (1977).

11. In 1997 Mopac was merged into Union Pacific and Union Pacific has operated in Palestine since that time without objection to its assumption of the Mopac contractual obligations, waiting to file this suit over twenty (20) years after absorbing Mopac.

12. The people of Palestine and Anderson County financed the expansion of the railroad that Union Pacific operates today.

13. The people of Palestine and Anderson County have relied on the railroad's commitments, undertaking many aspects of city and county planning and economic development with a view to nurturing the success of the railroad. The railroad has profited enormously from its agreement with Palestine and Anderson County.

## II.   ANSWER

14. Pursuant to Rule 8(b), Federal Rules of Civil Procedure, Defendants deny each and every allegation contained in Plaintiff's Original Complaint except those expressly admitted herein.

15. Defendants admit that railroads have played a leading and essential role in the transportation of people and goods as alleged in Paragraph 1. Defendants deny any remaining allegations in this paragraph. Throughout the history of this nation, railroads have continuously interacted with local governments including negotiating and performing contractual relationships with those governments.

16. Defendants admit that the Surface Transportation Board (STB) is vested with exclusive jurisdiction over (1) transportation by rail carriers, and the remedies with respect to rates, classifications, rules…, practices routes, services and facilities" of rail carriers and (2) the operation, abandonment, or discontinuance of railroad facilities" as alleged in Paragraph

2. However, this statutory grant of federal jurisdiction does not resolve the issue in this case. "The question of the substance and scope of Congress' displacement of state law still remains" *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) "There is also a presumption that the 'historic police powers of the States (are) not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress'" *Id*. The Fifth Circuit has explained that "the presumption against preemption is applicable to 'areas of law traditionally reserved to the states, like police powers and property law….'" *Franks Inv. Co. LLC v. Union Pac. R.R. Co*., 593 F. 3$^d$ 404, 407 (5th Cir. 2010)(en banc)(*quoting Davis v. Davis*, 170 F. 3d 475, 481 (5th Cir. 1999)(en banc)). As admitted by Plaintiff in Paragraph 32 of its Complaint, there are no current state statutes regulating the agreement between these parties, other than generally applicable contract property law. Defendants deny any remaining allegations in this paragraph.

17. Defendants deny all allegations in Paragraph 3.
18. Defendants deny all allegations in Paragraph 4.
19. Defendants admit that Union Pacific assumed the obligations to the City of Palestine and Anderson County that are embodied in the 1954 agreement that Missouri Pacific Railway Co. negotiated as alleged in Paragraph 5. Defendants deny any remaining allegations in this paragraph.
20. Defendants admit that the Fifth Circuit in 1977 held that the Interstate Commerce Commission lacked authority to invalidate the agreement with Missouri Pacific Railway Co. The Court held that "the Palestine Agreement does not affect the 'corporate simplification' merger in fact, the united system of MoPac, T&P and C&EI has already operated successfully for some time under the Agreement. No doubt the merged MoPac system would operate more efficiently and free of 'burdens on interstate commerce' if it

were relieved of its contractual obligation to pay its debts or a bargained-for wage scale. Congress allowed the ICC significant power to effectuate approved transactions, but it did not authorize gratuitous destruction of contractual relations even when it serves the general public interest when the destruction is irrelevant to the success of approved transactions." *City of Palestine v. United States*, 559 F.2d 408, 415 (5th Cir. 1977). Likewise, Union Pacific has now operated successfully for many years since its voluntary assumption of the Agreement and the repeal of all applicable state statutes. Defendants deny all remaining allegations in Paragraph 6.

21. Defendants deny all allegations in Paragraph 7.

22. Defendants deny all allegations in Paragraph 8.

23. With regards to allegations contained in Paragraph Nos. 9-11, such paragraphs identifying the parties require no response from Defendants.

24. Defendants deny the allegations in Paragraph 12. Defendants contend that there is no diversity of citizenship. Union Pacific maintains a principal office in Harris County, Texas and Union Pacific has asserted citizenship as a Texas Corporation numerous times.

25. Defendants deny the allegations asserted in Paragraphs No. 13 through 15.

26. Defendants admit that certain State laws are subject to "categorical" or "express" preemption under the ICCTA as alleged in Paragraphs 16-18. Defendants deny any remaining allegations in those paragraphs. Defendants deny that ICCTA preemption applies to the Agreement in this case and deny that the Agreement has "the effect of unreasonably burdening or interfering with rail transportation." *Franks*, 593 F. 3d at 413.

27. Defendants admit to the allegations in Paragraph No. 19-21.

28. Defendants admit that Texas courts, upheld by the United States Supreme Court, entered a judgment requiring all future successors of the International & G.N. Railroad company to

maintain office, shops and roundhouses in Anderson County. Defendants deny any remaining allegations in Paragraph 22.

29. Defendants admit to the allegations in Paragraph 23.

30. Defendants admit that Missouri Pacific voluntarily negotiated a restructuring of I&GN's obligation with the City of Palestine and Anderson County in 1954 and Missouri Pacific agreed to a new written agreement requiring Missouri Pacific to employ a certain number of workers in Anderson County as alleged in Paragraphs 24 and 25. Defendants deny all other allegations made in those paragraphs.

31. Defendants admit that Missouri Pacific petitioned the ICC to void the 1954 agreement in the 1970s as alleged in Paragraph 26. Defendants deny all other allegations made in this paragraph.

32. Defendants deny the allegations in Paragraph 27. Defendants note that the ICC Opinion cited *Texas v. United States*, 292 U.S. 522 (1934), which specifically upheld *IG&N v. Anderson County*.

33. Defendants deny the allegations in Paragraph 28. Defendants specifically object to any allegation that any findings by an Administrative Law Judge in an Interstate Commerce Commission proceeding concerning Mopac during the 1970s has any relevancy or bearing on the effect of the Agreement on the present operations of Union Pacific.

34. Defendants admit that the Fifth Circuit reversed the ICC decision and upheld the Agreement. Defendants deny the remaining allegations in Paragraph 29.

35. Defendants admit to the allegations in Paragraph 30.

36. Defendants admit that the ICCTA replaced the ICC as alleged in Paragraph 31. Defendant deny all other allegations made in that paragraph. Defendants specifically deny that the

1954 Agreement and its assumption by Union Pacific are categorically preempted by ICCTA.

37. Defendants admit that the Texas Legislature repealed the Office-Shops Act in 2007 as alleged in Paragraph 32. Defendants deny all other allegations made in that paragraph.

38. Defendants deny the allegations in Paragraph 33-34. Defendants specifically deny that the Agreement "has the effect of unreasonably burdening or interfering with rail transportation." *Franks*, 593 F 3d at 413.

39. Defendants admit that the voluntary contractual obligations assumed by a railroad, such as the Agreement in issue here, are not subject to preemption as alleged in Paragraph 35. Defendants deny all other allegations made in that paragraph.

40. Defendants deny the allegations made in Paragraph 36.

41. Defendants deny the allegations made in Paragraph 37-38.

42. Defendants deny the allegations made in Paragraphs 39-41 and specifically deny that the 1954 agreement as assumed by Union Pacific is not a voluntary contract made with due consideration from all parties and further deny that the agreement has "the effect of unreasonably burdening or interfering with rail transportation."

### III. AFFIRMATIVE DEFENSES

43. Defendants assert that the Court lacks subject matter jurisdiction. As discussed above, Plaintiff admits that there are no current state statutes regulating the agreement between these parties, other than generally applicable contract property law. Therefore, preemption is not applicable in this case. The agreement between these parties involves only "areas of law traditionally reserved to the states, like police powers and property law…." *Franks,* 593 F. 3$^d$ at 407.

44. Defendants assert the affirmative defense of equitable estoppel. Union Pacific voluntarily assumed the 1954 Agreement. Even after the adoption of the ICCTA and the repeal of any applicable Texas statutes, Union Pacific and Defendants continued to honor and perform the Agreement without protest. During the past twenty-five years since passage of the ICCTA, Union Pacific has taken no action to disavow or dispute the 1954 Agreement. Defendants have relied on the numerous, consistent statements and actions of Union Pacific representatives that both Union Pacific and Defendants would continue to comply with the Agreement. Union Pacific has by actions and statements repeatedly affirmed the 1954 agreement as a voluntary contract. As recently as 2019, Union Pacific Spokesperson Kristen South stated that "the company would continue to meet its contractual obligations" and that "Union Pacific remains in compliance with its agreement." Pennylynn Webb, *Union Pacific lays off 30 in Palestine*, Palestine Herald Press, April 25, 2019, at https://www.palestineherald.com/news/union-pacific-lays-off-in-palestine/article_e9c071d6-67ab-11e9-a110-e3c930f4a8da.html. In reliance on Union Pacific's statements, actions, and inactions, and in further consideration of the terms of the Agreement at the request of Plaintiff, Defendants have adopted ordinances and orders to close street crossings, assisted in economic development activities to promote the business activities of Union Pacific, devoted officer and staff resources to the enhancement and profitability of Union Pacific activities and provided lucrative tax incentives to railroad industry partners to increase Union Pacific business….

45. Defendants assert the affirmative defense of laches. Plaintiff admit that any claim they have made has been available either since the adoption of the ICCTA and creation of the Surface Transportation Board in 1995 or the repeal of the Texas Office-Shops Act in 2007. Union Pacific has no reasonable excuse for the delay in making this claim. The delay has caused

Defendants undue prejudice in that both the County and City have relied on Union Pacific's performance with the Agreement to allocate resources and make important decisions with regard to their economies, citizens, and industries.

46. Defendants assert the affirmative defense of res judicata. Res judicata is appropriate if: 1) the parties to both actions are identical (or at least in privity); 2) the judgment in the first action is rendered by a court of competent jurisdiction; 3) the first action concluded with a final judgment on the merits; and 4) the same claim or cause of action is involved in both suits. *Ellis v. Amex Life Ins. Co.,* 211 F.3d 935, 937 (5th Cir. 2000).

47. Union Pacific's predecessors, Anderson County, and the City of Palestine have been involved in considerable litigation regarding the issue before this Court. The Fifth Circuit Court of Appeals determined in 1977 that the 1954 agreement represented a contract and the ICC exceeds its authority when it attempted to void contracts that are not germane to the success of an approved 5(2) transaction. As the Fifth Circuit noted, "it's evaluation of the ICC's power might differ if Congress had granted the Commission direct authority to nullify any *contract* presenting a burden on interstate commerce, but we find no congressional award of such authority." *City of Palestine, Tex. v. United States*, 559 F.2d 408, 415 (5th Cir. 1977). Congress has not granted authority to the STB to nullify contracts entered into by railroad companies. *Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*, 297 F. Supp. 2d 326, 333 (D. Me. 2003); *The Twp. of Woodbridge, Nj, et al. v. Consol. Rail Corp., Inc,* 5 S.T.B. 488 (S.T.B. 2001). The ICCTA does not preempt voluntary contracts entered into by railroad companies and the STB does not have the authority to nullify such contracts. The parties are in the same position they were in when the 1977 judgment was entered and res judicata requires the Court to adopt the prior judgment

48. The Agreement has been ratified as a contract by all Parties. Plaintiff and its predecessors have described the agreement as a contract since its inception. On the day Mopac, Anderson County, and Palestine entered into the agreement, P.J. Neff executive assistant to the trustee in bankruptcy for Mopac described the contract as "a business matter and an attempt to create a friendly relationship in Palestine at all times between the railroad and the people." *Final Arguments in Rail Case*, The Marshall News Messenger, February 9, 1955. Until filing this suit, Union Pacific has described the agreement as exactly that, a business agreement. Regardless of the speculative value of any unasserted claims under prior state law, the Parties have engaged in a course of conduct to ratify the terms of this Agreement for many years. Any potential cause of action has been long barred by the applicable Statute of Limitations.

49. Further, if the Court were to construe 49 USC 10501 to preempt contractual obligations for all rail carriers, the statute would be an unconstitutional impairment of contracts. Such an overbroad interpretation of preemption under the ICCTA would free rail carriers of virtually any contractual obligations undertaken or assumed with any parties. The test for determining whether a statute is an unconstitutional impairment of contracts is (1) whether the law has operated as a substantial impairment of a contractual relationship and (2) whether the law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose. *Sveen v. Melin*, 138 S. Ct. 1815, 1817, 201 L. Ed. 2d 180 (2018).

50. Under Plaintiff's interpretation of 49 USC 10501, all contractual relationships with rail carriers would be preempted and impaired. This Agreement has been upheld by the Courts for over fifty (50) years. For over twenty-three (23) years since adoption of the ICCTA and the merger with Mopac, Union Pacific and the Defendants have mutually honored the terms

of this Agreement. For thirteen (13) years, this mutual Agreement has continued without protest since the repeal of any applicable state statutes. It is surely time for this Honorable Court to affirm, and Union Pacific to acknowledge, this moral and legal commitment, freely assumed and honored for all of these years.

### IV.     ATTORNEYS FEES

This case is frivolous and wholly without merit. Defendants are entitled to an award of attorney's fees and costs.

### V.     JURY DEMAND

Defendants demand a trial by jury.

### VI.     PRAYER

For these reasons, Defendants pray that all relief requested by Plaintiff be denied, and that Defendants recover their costs and attorney's fees, along with such other relief to which they may show themselves to be entitled.

Respectfully submitted,

/s/ James P. Allison\_\_\_
James P. Allison
SBN: 01090000
j.allison@allison-bass.com
J. Eric Magee
SBN: 24007585
e.magee@allison-bass.com
Joshua Humphreys
SBN: 24083218
j.humphreys@allison-bass.com

**ALLISON, BASS & MAGEE, L.L.P.**
A.O. Watson House
402 W. 12th Street
Austin, Texas 78701
(512) 482-0701 telephone
(512) 480-0902 facsimile

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the 22nd day of January, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and will send notification of such filing to the following via certified mail return receipt requested:

John W. Proctor
jproctor@brownproctor.com
Nathan Schattman
nschattman@brownproctor.com
BROWN, PROCTOR & HOWELL, LLP
830 Taylor Street
Fort Worth, Texas 76102

Trey Yarbrough
trey@yw-lawfirm.com
Yarbrough Wilcox, PLLC
100 E. Ferguson, Suite 1015
Tyler, Texas 75702

               /s/ James P. Allison____
               James P. Allison